```
              IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF ARKANSAS
                       PINE BLUFF DIVISION


GLENN EDWARD WHITHAM                                      PETITIONER


vs.                  Civil Case No. 5:04CV00307 HLJ


LARRY NORRIS, Director,
Arkansas Department of Correction                         RESPONDENT
```

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

    1. Why the record made before the Magistrate Judge is inadequate.

    2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

    3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite 402
    Little Rock, AR 72201-3325

## DISPOSITION

Now before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by Glenn Edward Whitham, an inmate of the Arkansas Department of Correction. Petitioner was charged on February 17, 1998, with manufacturing methamphetamine. He filed a motion to quash his arrest warrant and a motion to suppress evidence discovered pursuant to the search warrant. The trial court held a hearing on November 5, 1998, and denied both motions

(Respondent's Exhibit 2). On November 10, 1998, Petitioner entered a conditional guilty plea (Respondent's Exhibit 3), and he received a sentence of thirty years imprisonment. He appealed the denial of his motion to suppress to the Arkansas Court of Appeals, which affirmed his conviction. Whitham v. State, 69 Ark.App. 62 (2000) (Respondent's Exhibit 4). Petitioner states he filed a petition for rehearing that was denied on March 1, 2000, and that the Arkansas Supreme Court denied a petition for review (DE # 1, Petition, pp. 2 & 7). He filed a motion for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure, which the trial court denied, and the Arkansas Supreme Court affirmed in an unpublished per curiam opinion, Whitham v. State, 2003 WL 22100472 (Ark. Sept. 11, 2003)(Respondent's Exhibit 5).

In the present proceeding, Petitioner raises the following grounds for relief:

> 1. Trial counsel rendered ineffective assistance in failing to establish his standing to contest the violation of his rights under the Fourth Amendment and state law;
>
> 2. Appellate counsel were ineffective for failing to establish his standing to assert his Fourth Amendment rights; and
>
> 3. The decisions of the Arkansas courts in denying relief to Petitioner, although he was situated identically to his co-defendant, violate his right to due process and equal protection.

Respondent admits Petitioner is in his custody and that he has exhausted all available state remedies, but he contends the petition should be dismissed.

I.

In its opinion rejecting Petitioner's Rule 37 appeal, the Arkansas Supreme Court gave the following statement of facts from the record:

> On February 9, 1998, Bobby Pierce arrived at his girlfriend's apartment, # 49, to find appellant sleeping in one of the bedrooms. After being awakened, appellant began smoking methamphetamine, and explaining how to cook it. He asked Mr. Pierce to obtain pseudoephedrine to prepare methamphetamine. It was decided that the cooking of the methamphetamine would take place in the next door apartment, # 50.
>
> Mr. Pierce left the apartment, and contacted his brother, a member of the Drug Task Force. Officers provided Mr. Pierce with pseudoephedrine, which he took to appellant in apartment # 50. Appellant immediately began to break apart the pseudoephedrine pellets. The police obtained a search warrant for apartment # 50 and executed it in the early morning hours of February 10, 1998. Appellant was present, along with what was described as a "meth lab."

<u>Whitham v. State</u>  2003 WL 22100472 at 1.

Petitioner's co-defendant, Stephen Scott Whitaker, was also present in the apartment.  The police arrested both men and charged both with manufacturing methamphetamine.  Both defendants filed motions to suppress the evidence taken during the search, challenging the sufficiency of the affidavit underlying the nighttime search warrant for the apartment.  The trial court denied Petitioner's motion, and he entered a conditional guilty plea pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal

Procedure, which allowed him to appeal the denial of his motion to suppress.

The trial court denied Whitaker's motion to suppress also. He went to trial before a jury, was convicted and received a forty-year sentence of imprisonment. He also appealed to the Arkansas Court of Appeals, which decided his appeal before it decided Petitioner's. The court found Whitaker's motion to suppress should have been granted on the ground that the affidavit in support of the search warrant failed to state sufficient facts to justify a nighttime search, and it reversed Whitaker's conviction on that basis. Whitaker v. State, 1999 WL 1212494 (Ark. App. Dec. 15, 1999)(unpublished).

A different panel of the court rejected Petitioner's appeal of the denial of his motion to suppress, finding he had not established "standing" to challenge the search, although standing had not been an issue before the trial court, and the trial court had not denied his motion on that basis. Whitham v. State, 69 Ark.App. at 63-64. The Court of Appeals stated:

> Although an overnight guest in a home may claim the protection of the Fourth Amendment, one who is merely present with the home owner's consent may not. Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). The only information pertinent to this issue is the fact that appellant had been sleeping in apartment # 49, and, specifically, not apartment # 50 that was the object of the search. There is simply no evidence to suggest that appellant was an overnight guest in the Wallings' apartment. Furthermore, there was no evidence presented regarding appellant's relationship to the Wallings or that appellant had any other purpose in the Wallings' apartment aside from his illegal activity. We

> cannot reach the constitutionality of the search where appellant has failed to show that he had a reasonable expectation of privacy in the apartment that was ultimately searched. Rankin v. State, 57 Ark.App. 125, 942 S.W.2d 867 (1997).

Id.

## II.

The court will first address Petitioner's ground three, his claim that the state court's decision denying him relief, although he was situated identically to Whitaker, violated his right to due process and equal protection. Respondent contends this claim is procedurally barred because it was not raised properly in state court, and that, even if it is properly before this court, Petitioner is not entitled to relief because Fourth Amendment claims are personal in nature and he had the burden of establishing his own rights were violated by the challenged search. Petitioner states he presented this argument in his Rule 37 proceedings, and he contends the Arkansas Supreme Court's finding in his post-conviction appeal that "Rule 37 is not meant to function as a second opportunity to petition for rehearing or review" was an unreasonable application of Fiore v. White, 531 U.S. 225 (2001), and Griffin v. Illinois, 351 U.S. 12 (1956).

The phrase "unreasonable application" is language from 28 U.S.C. § 2254(d)(1), which provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

>    claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Williams v. Taylor, 529 U.S. 362 (2000). Petitioner does not cite the statute or Williams, and he does not explain this reference. In any event, I find neither Williams nor the statute are applicable to ground three, because no state court addressed the merits of the claim. Taylor v. Bowersox 329 F.3d 963, 968 (8th Cir. 2003). In addition, the only two cases cited by Petitioner, Fiore v. White and Griffin v. Illinois, do not specifically address Petitioner's due process and equal protection issues, and therefore are not "clearly established" Supreme Court precedent supporting his claims. Kane v. Espitia, 546 U.S. 9, 10 (2005)(holding that a petitioner may not obtain habeas corpus relief on claim he was denied access to a law library while he was representing himself in state court, because there is no clearly established precedent addressing the issue).

As for Respondent's procedural default argument, if a petitioner has not properly presented his claim to the state courts, Wainwright v. Sykes, 433 U.S. 72, 87 (1977), requires him to demonstrate adequate cause for this default and actual prejudice resulting from the constitutional violation he asserts. Coleman v.

Thompson, 501 U.S. 722,750 (1991).  If he is unable to satisfy the cause and prejudice requirement, the court may still consider the claim if he establishes a constitutional violation has probably resulted in the conviction of one who is "actually innocent" and the failure to hear the claim would result in a "fundamental miscarriage of justice."  Murray v. Carrier, 477 U.S. 478, 495 (1986).

Petitioner contends in a conclusory manner that, to the extent the Arkansas Supreme Court's refusal to address the claim is considered a procedural bar, its finding is not based on an adequate state ground.  He also makes the conclusory assertion that the due process and equal protection claims were fully and fairly presented to the state court.  He asserted in his petition that he filed a petition for rehearing, which the Arkansas Court of Appeals denied, and that he unsuccessfully petitioned the Arkansas Supreme Court for review, but he has not submitted copies of such petitions or the orders denying relief. Because Petitioner's assertions are unsupported by facts or legal authority, the court will not consider them.  I find Petitioner procedurally defaulted ground three when he did not raise it in his direct appeal proceedings before the Arkansas Court of Appeals or the Arkansas Supreme Court, and he has not established sufficient cause for the default.  I further find he has not asserted the existence of any "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--

that was not presented at trial," which shows a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 324, 327-328 (1995); Bousley v. U.S., 523 U.S. 614, 623 (1998).

Further, I find Petitioner has not established he would be prejudiced by this court's failure to consider the ground. The Supreme Court has held that, "[i]nconsistency in a verdict is not a sufficient reason for setting it aside," even where the inconsistent verdicts occurred in a joint bench trial. Harris v. Rivera, 454 U.S. 339, 345 (1981). In Petitioner's and Whitaker's cases, two different panels of an appeals court considered different issues in separately appealed cases. As far as the court can discern, the question of standing did not arise in Whitaker's case, and even if it had and that panel mistakenly granted Whitaker relief, Petitioner would not be entitled to the benefit of that mistake. See Beck v. Washington, 369 U.S. 541, 554-555 (1962)(holding the "Fourteenth Amendment does not 'assure uniformity of judicial decisions ....'"). Petitioner has not attempted to distinguish his case from the general rule in Rivera and Beck. The question simply comes back to whether Petitioner can show he had standing to challenge the search, a question barred from habeas review by Stone. I find he has not established he would be entitled to relief on ground three.

III.

In ground one, Petitioner argues trial counsel was ineffective in failing to establish he had standing to challenge the search of apartment #50.[1] He contends his attorney should have elicited testimony at his suppression hearing from Bobby Pierce that Pierce's girlfriend had evicted Petitioner and Whitaker from Apartment #49 the night of the search, and that he should have presented Corey Walling's testimony that Whitaker and Petitioner had spent several nights in Apartment #50 with the Wallings prior to the evening of the search. He argues this testimony would have established he and Whitaker were overnight guests in apartment #50, which would have established he had standing to challenge the search. Thus, he concludes, he would have obtained the same result in the appeal of his motion to suppress as Whitaker. He also asserts counsel failed to present Petitioner's own testimony, but he does not state what that testimony would have been. The court presumes it would have been the same testimony he alleges Pierce and Walling would have given.

---

[1] Stone v. Powell, 428 U.S. 465, 482 (1976), prohibits a federal habeas court from reviewing Petitioner's claims under the Fourth Amendment, since the State of Arkansas provided him with the opportunity to litigate them, and Petitioner does not contend the procedures themselves were not "full and fair." However, a Sixth Amendment ineffective assistance of counsel claim based on counsel's alleged failure to pursue a Fourth Amendment claim, or to pursue the claim adequately, may be addressed in habeas proceedings. Kimmelman v. Morrison, 477 U.S. 365, 375-77 (1986); Sweet v. Delo, 125 F.3d 1144, 1150 n6 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998).

The Arkansas Supreme Court addressed the merits of this claim in Petitioner's Rule 37 appeal.  The court recognized the long-established general standard for reviewing claims of ineffective assistance of counsel.

> To determine the competency of counsel, we apply the standard adopted in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the petitioner must prove that 'counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the outcome would have been different.'"

Whitham v. State, 2003 WL 22100472, at 1.  The court also noted there is a presumption counsel is competent and it is a defendant's burden to overcome that presumption.  Id.  In addition, the court cited to the standard for prejudice articulated by the Supreme Court in Hill v. Lockhart, 474 U.S. 52, 59 (1985), when the Court first applied Strickland to a defendant who had entered a guilty plea, that such a defendant must establish "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Whitham v. State, 2003 WL 22100472, at 1.

The court concluded Petitioner had not satisfied the first prong of the Strickland test in that he had not established counsel's conduct was unreasonable.  The court found counsel had

> elicited testimony at the suppression hearing that appellant had moved from apartment # 49 to apartment # 50, and that the search warrant was executed at 2:55 a.m. Also, Mr. Pierce testified at the suppression hearing that appellant and Mr. Whitaker planned on spending the night in apartment # 50, where they were going to manufacture methamphetamine."

11

Id. at 2.  The court further found Petitioner had not presented Pierce's testimony at the Rule 37 hearing and he had not alleged that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.  Id. at 2-3.

> Instead, appellant alleges that, but for his counsel's alleged error, the court of appeals would have reached a different decision in his direct appeal. In effect, appellant's alleged prejudice would require this court to review the court of appeal's resolution of the standing issue."

Id.  The court concluded this was insufficient to allege prejudice, and denied relief on this issue.

As the court touched upon above, under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal habeas court may "undertake only a 'limited and deferential review of [the] underlying state court decisions.'" Morales v. Ault, 476 F.3d 545, 549 (8th Cir.), cert. denied, 128 S.Ct. 177 (2007); Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir.), cert. denied, 540 U.S. 1059 (2003). This court may only determine whether the conviction or sentence violates the Constitution or laws or treaties of the United States. See Williams v. Taylor, 529 U.S. at 389.  The question under AEDPA is whether the Petitioner seeks to apply a rule of law that was clearly established by the United States Supreme Court at the time his state court conviction became final.  Id. at 379 (Stevens, J. concurring).   If he is, he is entitled to relief if the state court's decision was either "contrary to, or involved an unreasonable application of," that established law.  Id. at 391.

12

> '[A]n unreasonable application of [the Supreme Court's] precedent' occurs 'if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts.' Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J.). To be unreasonable, the state court's application of Supreme Court precedent 'must have been more than incorrect or erroneous.' Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Rather, the application 'must have been objectively unreasonable.' Id. (internal quotation omitted).

Garcia v. Mathes, 474 F.3d 1014, 1017 (8th Cir. 2007).

Petitioner argues the state court employed the wrong standard and it wrongfully failed to consider his prejudice argument. He contends the correct standard under Strickland and Kimmelman v. Morrison, 477 U.S. at 375, is "whether the failure to establish standing is outside the range of professionally competent assistance," and whether there is a reasonable probability that the result of the suppression proceeding would have been different. Petition, p. 10.

Neither party cited to any Supreme Court cases involving the same legal and factual circumstances involved here. However, I find Strickland, Kimmelman and Hill are clearly established Supreme Court precedent from which to determine the standard for reviewing a Sixth Amendment ineffective assistance of counsel claim based on a Fourth Amendment issue arising from the denial of a motion to suppress. Kimmelman involved the failure of an attorney to file a motion to suppress prior to trial. The Court held that, in addition to the performance prong of the Strickland standard, a

13

petitioner must also show the Fourth Amendment claim had merit and there is a reasonable probability that the verdict would have been different, absent the excludable evidence.  Id. at 374-375.  Even if a Fourth Amendment claim had merit and certain evidence should have been excluded, there may have been sufficient evidence, properly admitted, to support a guilty verdict.  Since Kimmelman involved a trial, its Strickland prejudice prong necessarily speaks in terms of verdicts, but it follows that, in cases involving guilty pleas, the correct standard for the prejudice prong must be a combination of the Hill standard and the Fourth Amendment prong of Kimmelman.  Therefore the ineffective assistance of counsel standard in Petitioner's case is whether counsel's performance fell below an objective standard of reasonableness, whether the Fourth Amendment claim has merit and, if so, whether there is a reasonable probability that, absent the excludable evidence, Petitioner would not have entered a guilty plea and would have insisted on going to trial.[2]  Further, in this case, the question of whether the Fourth Amendment claim has merit must first focus on what is at issue here, which is whether Petitioner had standing to challenge the search, before it reaches the ultimate question decided in Whitaker of whether the search was improper.

---

[2] A state court is not required to cite specific cases, or even be aware of them "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent.  Early v. Packer, 537 U.S. 3, 8 (2002).  Thus, it is immaterial whether the state court cited the correct standard.

14

The Supreme Court has held that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Minnesota v. Carter 525 U.S. 83, 88 (1998), quoting Rakas v. Illinois, 439 U.S. 128, 143 (1978). Status as an overnight guest is alone sufficient to show that a person has a reasonable expectation of privacy in the residence, Minnesota v. Olson, 495 U.S. 91 (1990), but one who is merely present with the consent of the householder does not have such an expectation. Minnesota v. Carter, 525 U.S. at 90.

In Minnesota v. Olson, Olson and Joseph Ecker were suspected of bank robbery. Ecker was apprehended when he and Olson tried to return to Ecker's home following the robbery, but Olson escaped. Police learned that Olson, who had his own residence, had stayed with Ecker several days before the robbery, and had fled to a duplex rented by a woman and her daughter. Olson spent the night of the robbery at the duplex, where he had a change of clothes with him. The day after the robbery, Police stormed the unit without a warrant and arrested Olson. 495 U.S. 93-94. The Court found Olson was an overnight guest at the duplex and "he had an expectation of privacy in the home that society is prepared to recognize as reasonable." Id. at 96-97.

In Minnesota v. Carter, the defendants were merely present in a home to package cocaine, and the Court found

15

> If we regard the overnight guest in <u>Minnesota v. Olson</u> as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely "legitimately on the premises" as typifying those who may not do so, the present case is obviously somewhere in between. But the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises. We therefore hold that any search which may have occurred did not violate their Fourth Amendment rights.

<u>Minnesota v. Carter</u>, 525 U.S. at 91.

There is ample evidence in the record that Petitioner and Mr. Whitaker were merely in apartment #50 to "cook" the drugs before they left town the next day,[3] and it is a close question as to what impact the additional testimony would have had on the question of Petitioner's standing.  Thus, I find it was not objectively unreasonable for the Arkansas Supreme Court to determine, under the performance prong of the <u>Strickland</u> standard, that Petitioner did not establish counsel's conduct in not presenting the evidence was unreasonable.  I further find that, even if the testimony had been presented, it would not have been objectively unreasonable for the state court to determine Petitioner did not have standing to challenge the search, and therefore he could not establish that, absent counsel's conduct, he would not have entered a guilty plea

---

[3] Mr. Pierce testified Petitioner and Whitaker were "looking for a place real hard, trying to find a place to" manufacture the drugs. Respondent's Exhibit 2, p. 377. Ms. Walling, the person who rented apartment #50, told police Petitioner was not even in the apartment when she went to bed that evening. Respondent's Exhibit 6, p. 9.

16

and he would have insisted on going to trial. Petitioner is not entitled to relief on ground one.

## IV.

Ground two is Petitioner's assertion that appellate counsel were ineffective because they failed to argue on direct appeal that Petitioner had standing to challenge the search and they failed to emphasize certain points regarding the standing issue. Petitioner also argues counsel did not object when the State raised the standing issue for the first time on appeal, although such was prohibited by State v. Houpt, 302 Ark. 188 (1990), at the time. Petitioner raised these issues in his Rule 37 proceeding, but the Arkansas Supreme Court found they were not cognizable because, under that Rule, "the sole issue is whether the plea was intelligently and voluntarily entered with the advice of competent counsel." Respondent's Exhibit 5, p. 6. Respondent contends these claims are procedurally barred, but he does not assert what avenue Petitioner had in which to raise them in state court, and this court will not consider the argument.[4]

Respondent also argues Petitioner's reliance on State v. Houpt is misplaced. The Arkansas Court of Appeals has distinguished Houpt.

---

[4] If there is no procedure through which to present the claim, there can be no procedural default.

The dissent contends that, because the State argues appellant's lack of standing for the first time on appeal, the issue cannot be considered by this court. The three cases cited for that proposition are <u>Arkansas Game & Fish Commission v. Murders</u>, 327 Ark. 426, 938 S.W.2d 854 (1997); <u>Pulaski County v. Carriage Creek Improvement District No. 639</u>, 319 Ark. 12, 888 S.W.2d 652 (1994); and <u>State v. Houpt</u>, 302 Ark. 188, 788 S.W.2d 239 (1990). In each of those cases, however, the appellant raised the appellee's lack of standing for the first time on appeal in an effort to obtain a reversal. The supreme court held only that lack of standing is not a jurisdictional defect of the sort that will allow an appellant to make an argument for reversal for the first time on appeal. In none of those cases did the court do any violence to the longstanding rule that we may affirm the result reached by the trial court, if correct, even though the reason given by the trial court may have been wrong. <u>See</u> <u>Summers v. State</u>, 292 Ark. 237, 729 S.W.2d 147 (1987) (trial court's decision affirmed although the decision should have been based on a different reason, which was not argued by the appellee in the trial court); <u>Garcia v. State</u>, 18 Ark.App. 110, 711 S.W.2d 176 (1986) (trial court's decision affirmed, albeit for a reason neither relied upon by the trial court nor argued below by the appellee). The dissent also incorrectly states that the issue of standing was argued to and clearly addressed by the trial court in each of the cases cited in the text of this majority opinion. In fact, the opinions in <u>Dixon v. State</u>, <u>supra</u>; <u>McCoy v. State</u>, <u>supra</u>; <u>Littlepage v. State</u>, <u>supra</u>; and <u>Davasher v. State</u>, <u>supra</u>, do not state that the State argued the issue in the trial court, much less that the trial court ruled on the question. Nevertheless, in each case, the supreme court affirmed the denial of the motion to suppress because the appellant had failed to establish his standing to raise a Fourth Amendment challenge in the first place. In fact, the opinions in <u>McCoy</u> and <u>Littlepage</u> state specifically that the trial court denied the appellants' motions on the merits of their Fourth Amendment arguments, and indicate only that the State argued on appeal the appellants' failure to establish standing. <u>See</u> <u>also</u> <u>Fernandez v. State</u>, 303 Ark. 230, 795 S.W.2d 52 (1990) (trial court denied motion to suppress because it found challenged search consensual, but supreme court affirmed because appellant failed to establish standing; no indication of what State argued either below or on appeal); <u>Duckett v. State</u>, 268 Ark. 687, 600 S.W.2d 18 (1980) (trial court's denial of motion to suppress, which

>was based on merits of the challenge, was affirmed by court of appeals on account of appellants' lack of standing, "a matter not discussed in the parties' briefs").

Ramage v. State, 61 Ark.App. 174, 178 (1998).  Thus, there was no basis to challenge the State's assertion of standing under Houpt. In addition, given the court's resolution of ground one, I find Petitioner has not shown he was prejudiced by counsel's failure to include in their brief the allegations in ground one in support of his argument that he was an overnight guest in apartment #50.[5] Petitioner is not entitled to relief on ground two.

IT IS THEREFORE ORDERED that this petition be, and it is hereby, dismissed with prejudice.  The relief prayed for is denied.

SO ORDERED this 9th day of September, 2008.

_____
Henry L. Jones, Jr.
United States Magistrate Judge

---

[5] These allegations include the ones made in ground one and the assertions that investigators' notes indicate that the informant told investigators that the defendants were staying in apartment #50 and that the Wallings' daughter brought defendants' their clothes.